THE CHRISTOPHER AND TENTH STREET RAILROAD COMPANY and Another, Appellants, *v.* THE TWENTY-THIRD STREET RAILWAY COMPANY and Another, Respondents.

*Agreement — when reformed — burden of proof — when a judgment will not be reversed as against evidence — decision admitting evidence, when reviewable on appeal — denial, for alleged want of power, of a motion resting in discretion.*

When an instrument is plain and unambiguous a court has not the right to read into it other words and phrases, in order to make a different agreement for the parties, although the court may conclude that the facts and circumstances surrounding the parties or connected with the execution of the contract were of such a character as that the imported language would make the agreement more in accordance with exact justice, or more nearly what may seem to the court to have been the probable intention of the parties.

Although, when it is shown that the parties intended to make another and different agreement from the one actually made, a court of equity has the power to reform it, yet a contract will not be reformed on loose, contradictory or unsatisfactory evidence; and in an action brought to reform a written contract the burden rests upon the plaintiff of establishing his position by a greater preponderance of evidence than is ordinarily required in civil actions.  The reformation of a written instrument will be granted ·only when there is a plain mistake clearly made out by satisfactory proof.

A judgment will not be reversed by an appellate court simply because it concludes that it would have found the facts otherwise than the jury, referee or trial court found them, allowance· being properly made for the more advan-

tageous position occupied by one who listens to the testimony of the witnesses, observes their conduct on the stand, hears their voices and notes the accentuation accompanying their testimony.

When the reformation of a written instrument is sought, it must be made to appear that the error therein was due either to the mutual mistake of the parties or a mistake by the one and fraud on the part of the other.

Relief can only be granted in an action brought to reform a written instrument in case the plaintiff establishes a common agreement of all the parties other than that expressed in the executed agreement, and that the insertion of the provision therein not agreed to was without the knowledge of any of the parties to it or without the knowlege of one of the parties, the other having knowledge of that fact and concealing it. Allegations to that effect may be stated by the pleader in the alternative.

An appellate court cannot, in the absence of a motion to strike out the same, review the decision of a trial court admitting evidence, when there was no objection taken to the admission thereof upon the trial, although an exception was taken thereto after its admission.

The denial, by the trial court, of a motion resting in its discretion, on the ground that it has not power to grant the same, is a mistake sufficient to call for a reversal of a judgment, unless it clearly appears, beyond controversy, that the result could not have been affected by such error of the court as to its power in the premises.

Appeal by the plaintiffs, The Christopher and Tenth Street Railroad Company and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 1st day of February, 1893, upon the decision of the court rendered after a trial at the New York Special Term.

*Frederick R. Coudert, Thomas G. Shearman* and *Everett P. Wheeler,* for the appellants.

*Edmund Randolph Robinson,* for the respondents.

Parker, J. :

The issues involved in this suit were so fully discussed in the opinion of the trial court as to render it unnecessary for this court to do more than briefly call attention to the several propositions involved in the decision now to be made.

The plaintiffs, as lessee and sub-lessee from the defendant, the Twenty-third Street Railway Company, of certain of its street railroad property situated on Fourteenth street in the city of New York, seek to restrain the defendants from running any cars on the

tracks thus leased to plaintiffs.   If the writing between the lessor
and lessee, to which the agreement of the parties was finally reduced
and formally executed about May 20, 1884, provided that the lessee
should have the exclusive right to use the property leased, the plain-
tiffs' demand for injunctive relief could not be questioned.

But while the agreement gave to the Christopher and Tenth
Street Railroad Company the right to run and operate its cars upon
and over a portion of the railroad property and routes owned by the
Twenty-third Street Railway Company, including its Fourteenth
street property, it expressly reserved to the lessor the same right as
to the last-named route.

The plaintiffs insist that, notwithstanding the lease purported to
reserve to the lessor the right to run its cars over so much of the
property described in the agreement to lease as was situated on
Fourteenth street, such was not the intention of the parties, and its
insertion in the written contract was owing to a mutual mistake of
the parties, and the relief prayed for in their complaint was, in part,
that the court so reform the writing that it should conform to the
agreement upon which the minds of the authorized representatives
of the parties originally met.

The defendants, by their answer, denied this contention of the
plaintiffs, and nearly all the evidence presented on the trial bore upon
that issue.    When the controversy was submitted to the trial court for ·
decision, the plaintiffs contended, as they do now, that the language
of the reservation, in the light of the evidence given upon the trial,
was ambiguous, and, therefore, in its construction regard should be
had to the situation of the parties and the surrounding circum-
stances; that, if so construed, it would necessarily and properly
follow that the reservation of rights to the lessor would be limited
to such part of its Fourteenth street property as lay between Ninth
and Eleventh avenues.

At the time the lease was executed there were two independent
routes·on Fourteenth street, one extending from Eleventh to Ninth
avenues, and the other from Ninth to Fourth avenues.    Evidence was
introduced tending to show that at and prior to the making of the
lease it was thought by some of those interested in the corpora-
tions which were parties to it, that the route between Ninth and
Eleventh avenues might become important to the lessor at some

future period in the operation of such of its surface railroads as it did not lease to the Christopher Street Railroad Company.

Other evidence was presented for the purpose of causing it to appear to the court that what the lessor intended to do was to reserve the right to run its cars over that portion of Fourteenth street extending from Ninth to Eleventh avenues. Reading the reservation in the light of such evidence, the appellants urge that it is not only within the province of the court, but is its duty as well, to so read it as to limit its operation to that portion of Fourteenth street.

Turning to the agreement, we find that it demises and leases the right to "operate a railroad upon and through the following routes in the city of New York, that is to say: Commencing at the intersection of Fourteenth street and Fourth avenue; thence through and along Fourteenth street, with double tracks, to Eleventh avenue, and from Fourteenth street through and along Tenth avenue, with double tracks, to Little Twelfth street; thence through and along Little Twelfth street, with single track, to Washington street; thence through and along Washington street, with single tracks, to Christopher street to connect with the present tracks of the party of the second part; also from the aforesaid tracks at Little Twelfth street and Tenth avenue through and along Tenth avenue to West street, with single tracks; thence through and along West street to Christopher Street Ferry, and thence through and along Christopher street, with double tracks, to Washington street. It being understood and agreed that the party of the first part shall also have the right to run and operate its cars upon and over the above-mentioned railroad and route in and along Fourteenth street."

It will be observed that the description thus given of the property leased does not designate a route from Fourth to Ninth avenues, and another from Ninth to Tenth avenues, but instead a property situated on Fourteenth street, extending from Fourth to Eleventh avenues. The reservation in terms refers to and includes the railroad property thus described. It provides distinctly and positively that the lessor "shall also have the right to run and operate its cars upon and over the above-mentioned railroad and route in and along Fourteenth street." Clearly, there is no ambiguity

here; no room to question what the draughtsman intended. And in case an instrument is plain and unambiguous the court has not the right to read into it other words and phrases in order to make a new and different agreement for the parties, notwithstanding the facts and circumstances surrounding them or connected with the execution of the contract may have been of such a character as to induce a conclusion that the imported language would make the agreement more in accordance with exact justice, or more nearly what to the court may seem to have been the probable intention of the parties. While nothing is needed beyond a reading of the description of the property leased, and the reservation which is contained in the sentence next following it to support a determination that the reservation is not ambiguous, and, therefore, not to be cut down by the court, because it may, perhaps, be of the opinion that the provision ought to have been otherwise, still it may not be out of place to observe that if the contention of the appellants touching the authority of the court in the premises be sound, and its construction could be adopted, there would result not only a different contract than that executed by the parties, but one differing from that which the trial court, in passing upon another question, has found the parties intended to make. After hearing and weighing all the evidence bearing upon the principal issue presented, and which the plaintiffs insisted should lead to a reformation of the lease, the court found that, " The parties to said lease never at any time mutually agreed, in terms or in substance, upon a provision that the use of the route in Fourteenth street by the Twenty-third Street Railway Company should be restricted to that portion of the route west of Ninth avenue; but, on the contrary, the said parties did mutually agree upon the said lease of May 20, 1884, sought to be reformed in this action."

While the plaintiffs have made the point with some appearance of seriousness that the contract should be treated as something entirely different from that which its language expresses, their efforts on the trial were principally directed to the introduction of testimony tending to show that another and different agreement than that which is expressed in the lease was contemplated by the parties.

The main purpose of its introduction was, of course, to show such a situation as should entitle plaintiffs to invoke the aid of a court of

equity, to the end that the contract should be so reformed as to make it represent the real intent of the parties to it.  The power of the court in such case is undoubted, and its exercise has, in many instances, promoted the ends of justice.  Many cases have been considered under this head of equity, and they have resulted in the establishment of a rule that a contract shall not be reformed on loose, contradictory or unsatisfactory evidence.  Upon the plaintiff in such cases rests the burden of establishing his position by a greater preponderance of evidence than is ordinarily required in civil actions. Some of the authorities have gone so far in that direction as to hold that the burden resting upon the plaintiff is precisely like that rule of the criminal law which requires that the guilt of the accused must be fully proved ; that neither the preponderance of evidence nor any weight of preponderant evidence is sufficient for the purpose, unless it generates full belief of the fact, to the exclusion of all reasonable doubt.

In *Southard* v. *Curley* (134 N. Y. 148) a divided court held that the authorities which received some examination at its hands did not require it to hold that this strong rule of criminal procedure had become a part of the practice in civil actions.  But thoroughly well established is it that reformation of written instruments will be granted only when there is a plain mistake clearly made out by satisfactory proofs.

The purpose in part of referring to the doctrine of the cases on this subject is, that it may be appreciated that the rule, which ordinarily governs this court in reviewing the evidence upon which a trial court has predicated its findings, should certainly be not less rigorously enforced than is required in actions generally — a rule which denies the right of this court to reverse a judgment simply because it concludes that it would have found the facts otherwise than the jury, referee or trial court found them, allowance being properly made for the more advantageous position occupied by him who listens to the testimony of the witnesses, observes their conduct on the stand, hears their voices and notes the accentuation accompanying their testimony.  The trial judge has found that there never was any such agreement made between the parties as would have resulted had the court reformed the contract as requested by the plaintiffs.  Yet the very first step which the plaintiffs were

bound to take in order to entitle them to the relief sought was to establish that the actual agreement of all the parties to the instrument was as alleged in the complaint.

The trial court, not content with finding that the plaintiffs failed to establish that the common agreement did not become a part of the written instrument, proceeded still further and found as a fact that the lease correctly expressed the real agreement between the parties.   That finding reads as follows:

"The said lease of May 20, 1884, between the Christopher and Tenth Street Railroad Company and the Twenty-third Street Railway Company and the Bleecker Street and Fulton Ferry Railroad Company, set forth in the complaint as Exhibit No. 3, fully embodies and correctly expresses the real agreement made between the said parties to the lease in question."

The findings alluded to not only justify but require the judgment dismissing the complaint, and they have such support in the evidence as denies to this court the right to reverse them.   A discussion of the evidence, which, after examination, we regard as amply sufficient to support the findings of fact made, will not be profitable, especially in view of the fact that they were considered at considerable length and with much care in the opinion of the court at Special Term.

The first exception to the admission of evidence, to which our attention is called by the appellants' brief, it is urged presents the question whether the court properly received in evidence a complaint in a prior action between these parties, in which these defendants were the plaintiffs, and the plaintiffs in the pending action were the defendants.   It was offered by the defendants for the purpose, among others, of bringing to the attention of the court the fact that such complaint alleged, among other things, that the lease of May 20, 1884, reserved to the Twenty-third Street Railway Company the right to operate cars on Fourteenth street from Fourth to Eleventh avenues, and that such allegation was not traversed.   The merits of the proposition suggested we are prevented from considering, because, while there was an exception taken, there was no objection made to the admission of the evidence.

The record shows that when the defendants offered the complaint in evidence, the court inquired the purpose of it, to which defendants'

counsel replied, and then it was admitted, the plaintiffs thereafter excepting. But plaintiffs had not objected in any form whatever to its admission. Their counsel was silent from the moment when the complaint was offered in evidence until after its admission. Nor did they afterwards move to strike it out.

George N. Curtis, who was elected a director of the Christopher and Tenth Street Railroad Company in June, 1884, testified that he was present at a meeting in October following, when the minutes were read of the previous meeting which contained a resolution ratifying the lease. He was permitted to testify to the discussion which took place on the motion to adopt the minutes as read. He said that one of the directors objected that the lease did not explicitly define the rights of the companies as to Fourteenth street, and that the president replied that he had a great deal of trouble to get the lease; that it was the best he could get, but it was not intended that the Twenty-third Street Railway Company should run east of Ninth avenue. He was then asked the following question: " State whether or not it was your understanding in voting for that resolution that the lease would give to the Twenty-third Street Railway Company the right to run cars in Fourteenth street east to Fourth avenue." The question was excluded on defendants' objection, plaintiffs excepting. Had the question been a proper one, its refusal would not call for a reversal of the judgment because of the finding of fact which the answer could not have affected, that the written lease fairly stated the common agreement arrived at by the parties before any attempt was made to reduce it to writing. But it was properly excluded for the reason that it had already been made to appear from the testimony of the witness that the reservation was considered and discussed, the fact being commented on that it did not define the rights of the respective companies in Fourteenth street.

The president gave his personal assurance merely that it was not intended that the Twenty-third Street Railway Company should run east of Ninth avenue. He did not pretend to say that the lease so restricted it. And the witness having full knowledge of the fact of the existence of the reservation clause in the lease and its failure to define the rights of the lessor and lessee in Fourteenth street, whether he had the capacity to comprehend or understand it was not material to any question before the court.

The exception taken to the ruling of the court, that it was without power to amend the complaint as requested, presents a more interesting question.

The complaint alleged that the written lease did not truly express the common agreement upon which the minds of all the persons representing the parties to it met, and that its failure to do so was owing to their mutual mistake.

When reformation of a written instrument is sought, it must, of course, be made to appear that the error was due either to the mutual mistake of the parties or mistake by the one and fraud on the part of the other.

The complaint did not mention the second ground, and it was not the plaintiffs' theory that the representatives of the lessor had been guilty of fraud.

After plaintiffs had rested their case and during the examination of defendants' witnesses, evidence was elicited tending to show that the officers of the lessor had intended precisely such a lease as had been executed. Upon being confronted with such testimony plaintiffs' counsel moved the court that the complaint be amended by adding, on page 11, folio 33, after the words "by accident and mistake which was mutual," the following: "Or by mistake on the part of the Christopher and Tenth Street Railroad Company, and by fraud on the part of the Twenty-third Street Railway Company."

The court denied the motion on the ground that it had no power on the trial to make the amendment proposed, and plaintiffs excepted.

Whether the court was mistaken in the position taken by it we are not agreed. One view is that by the proposed amendment it was sought to bring in a new cause of action, while the other is that, although at first blush it may have that appearance, such would not have been its effect.

The purpose of the suit was to reform a written instrument. Relief could only be granted in case the plaintiffs should prove: (1) A common agreement of all the parties other than that expressed in the instrument; (2) the executed agreement; (3) that the insertion of the provision not agreed to was without the knowledge of any of the parties to it, or without the knowledge of one of the parties, the other having the knowledge but concealing it.

It was long ago determined that these allegations might be stated by the pleader in the alternative, and the practice thus established has been steadily followed, so if the plaintiffs had stated in their complaint in the first instance that the insertion of a different provision than that upon which the minds of the parties met, was owing to the mutual mistake of the parties, or to the mistake of the one party and the fraud of the other, the point could not have been successfully made that the complaint, while pretending to allege one cause of action, in fact joined together two inconsistent causes of action.

As they may stand together when pleaded in the alternative, because forming a part of the appropriate allegations of a complaint setting up a cause of action to reform a contract, it necessarily follows that an amendment which states them in the alternative, where one is already expressed, cannot operate to change the cause of action.

Again, if we apply the rule adopted by the Court of Appeals in *Davis* v. *Lake Erie & W. R. R. Co.* (110 N. Y. 646) it will be at once apparent that the proposed amendment would not have resulted in alleging a new cause of action.

The court said : " It is a fair test to determine whether a new cause of action is alleged in the amended complaint that a recovery had upon the original complaint would have been a bar to any recovery under the amended complaint."

It is obvious that a recovery had upon the complaint in this action would have been a bar to any recovery on the complaint as it would have been if amended as requested.

As I view it, therefore, whether the court should have granted the motion and upon what terms, at that stage of the trial rested in its discretion, and had it denied the motion on that ground its decision would not have been called in question.

Now, the discretion of the court was not exercised, because of the erroneous conclusion that it was without power to grant it.   Is this mistake of such a character as calls for a reversal of the judgment ? Clearly it is unless it appears beyond controversy that the result could not have been affected by such denial, for we cannot possibly know how the court would have decided the question had it passed upon the merits of the application.

The motion, not in terms but in effect, was one to conform the complaint to the facts proved. Its purpose was not to secure the admission of evidence which otherwise would have been excluded. Plaintiff's testimony was all in. Thereafter he could only rebut that offered by the defendant. For that purpose no amendment was needed. Indeed, the fact appears that none of the evidence offered was excluded on the ground that it was not within the issues presented by the pleadings.

The evidence which plaintiffs' counsel regarded as indicating fraud on the part of the officers of the lessor was introduced by the defendants. Plaintiffs' counsel quickly attempted to so change this complaint as to enable their clients to reap the advantage, if any, which should accrue from such testimony. It seems to be clear that the motion made was in effect, and should be treated as, one to amend the complaint to conform to what the plaintiffs may have regarded as the facts proved.

The denial of the motion, although upon untenable ground, should not bring about a reversal if it be certain that the same judgment would have followed.

And how would it have been possible for the proposed amendment to have occasioned the working out of a different result? Before reaching the question whether the reservation clause was inserted in the lease through mutual mistake, or mistake by one party and fraud by the other, the court had to determine whether the common agreement of all the parties was as alleged in the complaint.

This question lay at the very foundation of the plaintiffs' alleged cause of action. With that fact established they would be entitled to have the court find how it came that the lease stated differently. But without it there could be no favorable finding on that subject.

Now, the trial court found: *First*, that there never was such an agreement between the parties as the complaint alleged; and, *second*, that the lease truly expressed the common agreement of all the parties.

Necessarily then the court could not have found that the reservation clause was inserted through the mistake of one party and the fraud of the other.

And the right to have the court refuse to make such a finding measures all the advantage that could have accrued to the plaintiffs had the motion been granted.

It follows that no harm resulted from the mistake, and, therefore, it does not justify a reversal of the judgment.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.

